UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 DEC 13 PM 4: 12
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| **ERIK SALAIZ,** § § § **Plaintiff,** § § v. § § **SOFI LENDING CORP.**, a California § Corporation § § § § **Defendants.** § § | EP22CV0459 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant SOFI LENDING CORP. ("SOFI," "Defendant") is a corporation organized and existing under the laws of California with its principal address at 2750 E. Cottonwood Parkway, Suite 300 Cottonwood Heights, Utah 84121 and is a registered foreign corporation in Texas and can be served via registered agent Corporation Service Company DBA CSC- Lawyers Inco at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

### JURISDICTION AND VENUE

3. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

1

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendant SOFI automated text messages to Plaintiff; adds little complexity to the case.

4. Personal Jurisdiction. This Court has general personal jurisdiction over Defendant SOFI because they have repeatedly placed automated text messages to Texas residents, derive revenue from Texas businesses, and they sell goods and services to Texas residents, including the Plaintiff. Defendant SOFI is a corporation and maintains a registered agent within the Western District of Texas.

5. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single automated text message from Defendant SOFI that are the subject matter of this lawsuit.

6. This Court has venue over the Defendant SOFI because the automated text messages at issue were sent by the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

4

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

20. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

21. One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

22. An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

23. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

24. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call, they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

25. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

26. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

27. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

28. Plaintiff's personal cell phone (XXX) XXX-5210 has been registered on the National Do-Not-Call Registry since June 1, 2021.

29. Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

30. Defendant SOFI offers multiple different loans and banking products to consumers nationwide including Texas according to their website https://www.sofi.com.

31. One of the marketing tools Defendant SOFI uses to generate new leads is by authorizing their agents to send illegal automated text messages to thousands of consumers *en* mass by using an automatic telephone dialing system ("ATDS").

32. Defendant SOFI has been sued prior to this lawsuit for violating the TCPA *Lopez et al v. Onvoy, LLC et al,* No. 4:22-cv-01607-HSG (CA.ND., Mar. 14, 2022) and continue their illegal behavior because violating the TCPA benefits Defendant SOFI financially.

33. Plaintiff received at least two (2) unauthorized automated text messages to his personal cell phone ending in 5210 within a thirty-day (30) period from Defendant SOFI soliciting their personal loan services ("the text messages"). *See "Exhibit A."*

34. Plaintiff clicked on the text messages with the link https://www.sofi.com/boo and was directed to Defendant SOFI's website they own and control https://www.sofi.com.

35. Defendant SOFI does not have any prior existing business relationship with Plaintiff.

36. Plaintiff has never been a customer or client of Defendant SOFI.

37. Plaintiff did not give Defendant SOFI his prior express written consent to receive the text messages.

38. The text messages Plaintiff received from Defendant SOFI were generated and sent using an ATDS.

39. Specifically, to this case, Defendant SOFI texting software and ATDS by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers, and to text such numbers.

40. The text messages Plaintiff received from Defendant SOFI has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition, to wear and tear on his phone, interference with the use of his phone, and consumption of battery life.

41. The text messages Plaintiff received from Defendant SOFI does not address Plaintiff by name and could have reached anyone in the US.

42. Table below displays the automated text messages made to Plaintiff by Defendant SOFI:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|

7

| 1. | 10/07/2022 | 2:58 PM | 415-763-0480 | Automated text message |
| 2. | 10/26/2022 | 5:34 PM | 415-763-0480 | Automated text message |

43. Each of the text messages came from phone number 415-763-0480.

44. Defendant SOFI spoofed the caller ID they text Plaintiff from.

45. The text messages Plaintiff received from Defendant SOFI were placed while knowingly ignoring the national do-not-call registry. The text messages were placed without training their agents/employees on the use of an internal do-not-call policy.

46. Plaintiff sent a request for Defendant SOFI's internal do not call policy on December 5, 2022, to homeloans@sofi.com which is email listed on the website they own and control https://www.sofi.com.

47. Defendant SOFI failed and/or refused to send Plaintiff a copy of any internal do not call policy.

48. On information and belief, Defendant SOFI did not have a written do-not-call policy while they were sending Mr. Salaiz the text messages.

49. No emergency necessitated none of the text messages.

50. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE TEXT MESSAGES**

51. The text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

8

52. The text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

53. The text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

54. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### The Plaintiff's cell phone is a residential number

55. The text messages were to Plaintiff's cellular phone ending in 5210 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

56. The actions of Defendant SOFI violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendant SOFI violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

57. The text messages by Defendant SOFI violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### **CAUSES OF ACTION**

9

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

58. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59. Defendant SOFI and/or their agents placed automated text messages to Plaintiff's cellular telephone.

60. Plaintiff never consented to receive automated text messages from Defendant SOFI. Plaintiff has had no relationship with Defendant SOFI.

61. Defendant SOFI automated text messages were made for purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA. Defendant sent text messages to Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least two (2) occasions in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

62. As a result of their unlawful conduct, Defendant SOFI repeatedly invaded the personal privacy of Plaintiff, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant SOFI to stop their unlawful text message campaigns.

63. Not only did Defendant SOFI make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

64. If the Court finds that Defendant SOFI willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

65. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66. The foregoing acts and omissions of Defendant SOFI and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

67. Defendant SOFI sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

68. Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(c)(3)(F) by Defendant SOFI by the automated text messages described above, in the amount of $500 per automated text message.

69. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

70. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

71. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72. The foregoing acts and omissions of Defendant SOFI and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

73. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

74. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### Violations of The Texas Business and Commerce Code 305.053

75. Plaintiff incorporates the foregoing allegations as if set forth herein.

76. The foregoing acts and omissions of Defendant SOFI and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

77. Plaintiff is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

78. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for two automated text messages.

E. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for two automated text messages.

F. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G. An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.   An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

I.   Such further relief as the Court deems necessary, just, and proper.

December 13, 2022                              Respectfully submitted,

*[signature]*

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-540-5210
Salaiz.ep@gmail.com



Exhibit A